UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LARRY BROWN, | : | Case No. 5:03CV2246 |
| | : | |
| Plaintiff, | : | |
| | : | JUDGE KATHLEEN O'MALLEY |
| v. | : | |
| | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | OPINION AND ORDER |
| | : | |
| Defendant. | : | |

On November 4, 2003 Plaintiff, Larry Brown ("Brown"), filed a complaint (Doc. 1) pursuant to 42 U.S.C. §§ 405(g) and 1283(c)(3) seeking judicial review of the Social Security Administration's decisions denying Brown's claims for disability benefits ("DIB"), 42 U.S.C. §§ 416, 423, and supplemental security income benefits ("SSI"), 42 U.S.C. §§ 1381, *et seq*. On March 29, 2004, Chief Judge Matia remanded this case to the Commissioner of Social Security ("Commissioner") pursuant to sentence six of section 205(g) of the Social Security Act, 42 U.S.C. §405(g) after the file could not be located. (Doc.15). After a hearing on September 21, 2004 in which Brown testified, Administrative Law Judge Lazzaro ("ALJ") issued a notice of Decision-Unfavorable. After Brown submitted written exceptions to the ALJ's Decision-Unfavorable, the Appeals Council found no reason to change the ALJ's hearing decision, thus making it the final decision of the Commissioner. On February 17, 2006, the Commissioner filed a motion to reopen the case (Doc. 17), which was granted. Both parties filed briefs on the merits (Docs. 22 & 23) and Magistrate Judge David Perelman ("Magistrate Judge") issued a Report and Recommendation

("R&R") (Doc. 24) recommending that the Commissioner's final determination be reversed and an order for remand be entered pursuant to 42 U.S.C. §405(g).  The Commissioner filed objections to the R&R on June 28, 2007 (Doc. 25).    For the reasons outlined herein, the Court finds the Commissioner's objections to be well taken.  Accordingly, the Court declines to adopt the R&R, the Commissioner's decision is **AFFIRMED**, and this matter is **DISMISSED**.

## I. FACTUAL BACKGROUND

### A. Personal and Medical Background

Brown was born on April 1, 1956. He completed his high school education in 1996 when he received his GED.  In his working career, Brown has been employed as a delivery driver, plastics factory laborer, stock person, tow motor operator, and cashier.  At the time of the Commissioner's final decision, Brown was forty-eight (48) years old.  Brown has not worked since May 9, 1998, at age forty-two (42) because of chronic low back pain and left knee pain.

In April of 1999, after being out of the workforce for nearly a year, Brown first received treatment from the Veterans Administration Hospital ("VA").  After an x-ray and examination, Brown was diagnosed with left leg sciatica, hypertension, polysubstance abuse, degenerative joint disease, and hepatitis C.  Further examination at the VA revealed Brown had a history of back pain dating back to age thirty-five (35).

Brown was first examined at the request of the Bureau of Disability Determination ("BDD") on June 9, 1999.  During this examination and follow up visits, Brown underwent x-rays and an MRI which revealed progression of lumbar spine disc herniation and osteophyte formation.  Despite these findings, the examining doctor, Dr. Verst, concluded that Brown could do work that involved standing, and lifting or handling mild to moderate objects.

2

In January 2000, Brown received emergency room treatment for low back and left leg pain. Brown was prescribed pain medications and released from the emergency room.

Brown was next examined, at the request of the BDD, in July 2000 by Dr. Citta-Pietrolungo. According to Dr. Citta-Pietrolungo, Brown presented with no acute distress, but limped on his left leg without the use of his cane.  Dr. Citta-Peitrolungo reported clinical findings consistent with chronic disc herniation at the vertebral level L3,4, rule out left L4 radiculopathy, lumbar muscle spasm, and osteoarthritis of the left knee.  The examination also revealed one inch atrophy in the left thigh. The examining physician opined that Brown would require a cane to walk long distances or over uneven surfaces, but that the cane was not required for short distances.  Dr. Citta-Peitrolungo also stated manual labor may cause further strain to the lumbar spine.

In August 2000, Dr. Wilma Caldwell completed a Medical Advice Request and Functional Capacity Assessment.  Dr. Caldwell opined that Brown could occasionally lift and/or carry fifty (50) pounds, frequently lift and/or carry twenty-five (25) pounds, stand and/or walk six (6) hours in an eight (8) hour workday, sit six (6) hours in an eight (8) hour workday, push and pull unlimitedly and kneel and crouch occasionally.

Throughout 2001, Brown underwent a series of x-rays, MRIs, and physical examinations at the VA.  The initial findings revealed L3, 4 posterior lateral herniated nucleus pulposis with mild foraminal encroachment.  The recommendation was medication, physical therapy and epidural steroid injections.  After these treatments, a physical examination revealed straight leg raising was eighty (80) degrees on the right side and seventy (70) degrees on the left side.  Another MRI indicated an L3, 4 bulge with no evidence of nerve root irritation. The medical record also indicated Brown was felt to have a questionable exaggeration of low back pain and was referred to the pain

3

clinic.

In January 2002, Shamsi Lashgari, M.D. examined Brown at the VA. Dr. Lashgari found no atrophy and normal joint mobility, except for the left leg because of pain with hip flexion and positive straight leg raising, with significant pain on the left side. In August of 2002, Dr. Lashgari completed a physical capacity assessment. Dr. Lashgari opined, based on a finding of disc bulging at L3, 4 with narrowing of foramen, that Brown was limited to frequently carrying five (5) to seven (7) pounds, standing or walking up to two (2) hours of an eight (8) hour workday, sitting eight (8) hours of an eight (8) hour workday day, that his legs needed to be elevated to stool level, he could rarely or never climb, balance, stoop, crouch, kneel, push or pull, and he could occasionally reach, handle, and feel.

Brown also presented to several urgent care facilities throughout 2003, complaining of similar low back and left side leg pain and to obtain refills of his prescribed pain medications.[1] An MRI in April 2003 revealed Brown had right disc herniation at the L2, 3 level, contributing to moderate to severe right-sided neural foraminal stenosis, a far left lateral disc herniation at the L3, 4 level contributing to left-sided neural foraminal stenosis and minimal disc bulge and degenerative facet changes contributing to moderate bilateral neural foraminal stenosis.

In October 2003, Brown was assessed by Dr. Eric Rodriguez as having chronic low back pain with herniated discs. Dr. Rodriguez opined Brown was disabled and in need of single level AMHA housing because of his difficulty ambulating, particularly on the stairs, apparently after Brown

---

[1]     The Court notes that the ALJ rendered his first Decision-Unfavorable on October 25, 2002. The later medical evidence is part of the administrative record, however, because Brown's claim was remanded to the Commissioner when the file could not be located. *See* Doc. 15. Subsequently, the ALJ rendered a second Decision-Unfavorable on February 10, 2005, in which the ALJ considered all of the evidence related here.

requested a letter saying he was disabled in order to obtain the aforementioned housing.[2]

In January 2004, at a usual check-up visit, Brown reported feeling great, but that he still had episodes of sciatica.  Brown indicated the medications helped to control his pain. *See Leffel v. Comm'r of Soc. Sec.,* 30 Fed. Appx. 459, 461 (6th Cir. 2002) (finding that ALJ's determination that claimant was not disabled is supported by substantial evidence where claimant was able to do household chores, engage in limited recreational activity, pain medication offered some relief, and physical appearance did not indicate severe pain, discomfort, or weakness).  Later in 2004, Brown presented to the VA with complaints of black sputum (possibly from his admitted smoking) and use of cocaine.

### B. Psychological Background

In October 2000, Dr. Leidal performed a psychological examination of Brown. Brown presented with depression and drug use in the previous few years.  Dr. Leidal determined that Brown's speech and ability to communicate were average, he was alert and oriented, and his behavior was generally composed and appropriate.  Dr. Leidal opined that Brown's memory was fair, his ability to understand simple language was good, but his ability to understand more complex language was fair to below average.  Brown's insight and judgment were fair, his general fund of information was below average and his IQ was ninety (90), which, according to Dr. Leidal, is average.  Brown denied aggressive or violent behavior and he had no suicidal ideations. Dr. Leidal

---

[2]    As pointed out by the Magistrate Judge in footnote 5 of the R&R, because Brown requested, from Dr. Rodriguez, a letter stating that he was "disabled" so that he could obtain AMHA housing, the medical opinion communicated in that letter should be given diminished significance.  Additionally, simply because Dr. Rodriguez found Brown to be "disabled" for purposes of obtaining AMHA housing does not preclude the Commissioner or ALJ from finding he is not disabled under the Social Security Act. *See* 20 C.F.R. §§ 404.1504 & 416.904.

diagnosed polysubstance dependence, dysthymic disorder, and personality disorder and also assigned Brown a current Global Assessment Functioning score of sixty (60), determining his psychological impairment was mild to moderate, but *not impairing his ability to work*. Dr. Leidal opined that Brown's drug abuse would be the most significant problem in maintaining employment.

Dr. Leidal made the following additional findings concerning Brown: his ability to relate to others, to accept criticism and respond appropriately to a supervisor, and adaptability were all fair; his ability to accept short, simple instructions, and ability to understand and carry out more detailed instructions were fair, but his ability to carry out more complex instructions was below average to poor; his ability to sustain ordinary routine work and complete routine daily tasks was fair; his ability to actually obtain productive employment was fair to below average, but his ability to maintain employment was fair; and his ability to tolerate work stresses and complete a normal workday was below average but not markedly impaired. Dr. Leidal found that from a psychological standpoint, Brown could probably work, although he may need some type of assistance or treatment to do so, stating that services of the Bureau of Vocational Rehabilitation may be helpful.

In December 2000, a state psychologist, Dr. Tishler, reviewed Brown's record and found that Brown could perform simple, routine tasks when not abusing drugs or alcohol. Dr. Tishler found Brown to be only moderately limited in his understanding and carrying out detailed instructions. Brown is moderately limited in both his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and in his ability to perform at a consistent pace without rest periods of an unreasonable number and length, according to Dr. Tishler.

### C. Hearing Testimony

At a hearing in front of the ALJ, Brown testified that, after he worked or participated in any

6

physical activity, he experiences low back pain that moves to his buttocks and down the left side of his leg. To ease the strain on his left leg, Brown uses a cane that was prescribed by Dr. Rodriguez. Brown also expressed that he had trouble riding in a car on a recent trip to West Virginia.  Brown stated that he sometimes does simple household chores, such as cooking, vacuuming, or making his bed.  Brown also testified that he makes trips to the grocery store occasionally.

## II.  <u>DISCUSSION</u>

On February 10, 2005, the ALJ concluded that Brown was ineligible for DIB and SSI because he was not suffering from a "disability," as defined by the Social Security Act, at any time through the date of the decision.  Disability, for the purpose of SSI and  DIB determination, is defined as the: "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. § 1382(c)(3); 20 C.F.R. § 416.905.

To determine whether Brown is disabled in this context, and pursuant to 20 C.F.R.§§ 404.1520 and 416.920, the ALJ must undertake a five step sequential analysis that is required under the above cited regulations.  The fourth step of the analysis, under which the Magistrate Judge recommended remand, provides:

> At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work.  If you can still do your past relevant work, we will find that you are not disabled.

*See* 20 C.F.R. 404.1520(a)(4)(iv).  This fourth step governs the central issue in this case, because the ALJ's Decision-Unfavorable appears to acknowledge that Brown has satisfied the first three

7

requirements of the analysis.[3]  The quandary is whether Brown can still engage in his past relevant work, because if so, then the ALJ properly can find that he is not disabled.

Based on Brown's work history as a delivery driver, plastics factory worker, stock person, tow motor operator, and most recently as a cashier, as well as the determination that the residual functioning capacity (RFC) included "light work activity" the ALJ concluded that Brown could perform his past relevant work as a cashier.  The ALJ concluded, therefore, that Brown does not suffer from a "disability" as defined by the Social Security Act.  It is from this determination which Brown appeals.

Brown argues that "substantial evidence" does not support the determination that Brown retains the RFC to perform his past relevant work as a cashier.  Brown specifically claims that: (1) the ALJ's decision did not consider properly the opinions of treating and examining physicians in the record, and (2) the ALJ's decision that Brown's only limitation arising from his mental impairments is a restriction to performing simple and routine tasks was not supported by "substantial evidence."  *See* Doc. 22 at 11, 14.  Brown further argues that substantial evidence does not support a finding that Brown can perform "light work" and that, at a minimum, remand is appropriate for vocational expert testimony to determine whether Brown is capable of performing relevant past work activity. *See* Doc. 22 at 15.

Magistrate Judge Perelman concluded that the ALJ's decision, "committed a fundamental error, which requires reversal and remand, that being that [the ALJ] chose to act as his own medical

---

[3]     The ALJ implicitly concludes that Brown has satisfied the first three steps of the analysis, which are: (1) he is not engaged in substantial gainful activity; (2) he has a severe medically determinable physical impairment; and (3) those impairments meet the requirements under the federal regulations. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(iii).

8

expert." Doc. 24 at 4.  The Magistrate Judge went on to state that there was objective medical evidence in the record that was probative of Brown's subjective complaints.  Concerning the ALJ's finding that the Patient Physical Capacity statement, completed by Dr. Lashgari in August 2002, is not supported by objective medical evidence, the Magistrate stated that such a finding is a, "proposition calling for testimony from a medical expert" rather than the ALJ exercising his own medical expertise.  The R&R concluded that the ALJ's final determination should be reversed and an order of remand should be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g).  As discussed fully below, the Court has a different interpretation of the conclusion drawn by the ALJ and of his authority to draw it.[4]

The Commissioner's objections to the R&R are summarized as follows: (1) the determination

---

[4]     As an ancillary matter, the Magistrate Judge stated that a previous application for DIB filed by Brown on April 19, 1999 and denied on June 30, 1999 should be reopened, concluding that a filing of a second application within one year of the prior denial entitled Brown to reopening of the earlier determination. The R&R states that "[t]he filing of the second application in this case within one year of the prior denial **entitled** the plaintiff to reopening of the earlier determination," citing to *Brinker v. Wenberger*, 522 F.2d 13 (8th Cir. 1975). Doc. 25 at 6 (emphasis added).  The *Brinker* court, however, noted that, under 20 C.F.R. § 404.957(a), an initial determination **may** be reopened within twelve months from the date of notice of the initial decision. *Brinker*, 522 F.2d at 15 (emphasis added).  The court went on to state that, since the plaintiff in that case had filed a second application within the time period prescribed by the regulation, his application was **subject to being reopened**, precluding application of administrative *res judicata. Id* (emphasis added). Nowhere in the decision does it state a plaintiff is entitled to have an earlier determination reopened, nor does the ALJ in this matter seek to bar Brown's claim through application of administrative *res judicata*. Other courts, moreover, have stated that a refusal to reopen a determination is a discretionary one, and not subject to judicial review. *See Johnson v. Sullivan*, 936 F.2d 974, 976 (7th Cir. 1991); *Califano v. Sanders*, 430 U.S. 99, 107-08 (1977).  For these reasons, the Court will not review the ALJ's decision not to reopen Brown's previous application for DIB, and declines to order remand to reopen the first determination.

9

of Brown's RFC is not the duty of a physician, rather, at the administrative hearing stage, it is a determination expressly reserved for the ALJ; and, (2) in conjunction with calculating the RFC, the ALJ has the responsibility of weighing the evidentiary record and resolving conflicts therein. *See* Doc. 25 at 2-3.

### A. Legal Standard

In reviewing claims under the Social Security Act, a district court does not review the matter *de novo*. Instead, a district court is limited to examining the entire administrative record to determine whether the Commissioner's final decision is supported by <u>substantial evidence</u>. *See Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984); 5 U.S.C. § 706(2)(E); 42 U.S.C. § 405(g).

"Substantial evidence" is evidence that a reasonable mind would accept to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence standard requires more than a scintilla, but less than a preponderance of the evidence. *Id.* To determine whether substantial evidence exists to support the Commissioner's decision, a district court must not focus, or base its decision, on a single piece of evidence. Rather, a court must consider the totality of the evidence on record. *See Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980); *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

When dealing with conflicting evidence, a district court generally will defer to the ALJ's findings of fact. To that end, the Sixth Circuit instructs that "[t]he substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes that there is a zone of choice within which the decision maker can go either way without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)). Accordingly, for this Court to accept the ALJ's conclusions, it must only find that

they are based on substantial evidence.

**B. Analysis**

The Commissioner argues that the, "determination of Brown's RFC is not the duty of a physician, but, at the administrative hearing stage is a determination that is expressly reserved for the ALJ." Doc. 25 at 2.  The R&R implies that this determination is not the province of the ALJ, or at least not in the absence of expert opinion testimony supporting that determination,  when it suggests that the ALJ was acting as his own medical expert when he found that Brown had an RFC for light work activity.[5]  The R&R references cases where the medical evidence's short comings are so plain that a determination of a claimant's RFC without the benefit of expert testimony is appropriate, but finds this not to be one of those cases.  The Court agrees that the medical evidence does not suffer such plain short comings; but, nevertheless, finds the evidence does not preclude the ALJ's determination that Brown retains the RFC for light work activity.  Accordingly, as detailed below, the Court disagrees with the Magistrate Judge and finds the Commissioner's objection to be well taken.

At the outset, the Court observes that the regulations expressly state that, although opinions from medical sources will be considered, the final responsibility for deciding issues such as RFC ultimately rests with the Commissioner. 20 C.F.R. § 404.1527(e)(2).  Additionally, although medical sources, including the treating physician, are used to *provide evidence* on the nature and severity of impairments, the final responsibility for *deciding a claimant's RFC is reserved to the*

---

[5]    In reviewing the R&R, it is unclear to the Court which of the ALJ's ten findings involved the "fundamental error"of the ALJ acting as his own medical expert. Doc. 25 at 3-4. As such, when applicable, the Court examines each objection as though it involved the ALJ acting as his own medical expert.

11

*Commissioner*. 20 C.F.R. § 416.927(e)(2) (emphases added).  When the case is with the administrative law judge, or the Appeals Council, the ALJ is responsible for assessing the claimant's RFC. 20 C.F.R. §§ 404.1546, 416.946.  Further, when considering the mandates of the regulations, the Sixth Circuit reiterated that a determination of RFC is part of a disability evaluation, and is *expressly reserved to the ALJ*, rejecting the claimant's argument that this is a duty left to the treating physicians. *Ford v. Comm'r of Soc. Sec.*, 114 Fed. Appx. 194, 198 (6th Cir. 2004).  The only requirement to upholding the ALJ's determination, with respect to a claimant's RFC, is that the finding is supported by substantial evidence. As discussed below, in this case, the Court finds it was.

Under the Court's reading of the R&R, it appears the Magistrate Judge found that the ALJ's decision not to "give weight" to Dr. Lashgari's opinion was flawed because of the ALJ's reasoning that the opinion was not supported by "objective medical evidence."  The Court, however, has a different interpretation of the ALJ's finding regarding Dr. Lashgari's opinion.  First, regarding the ALJ's decision, the Court does not believe the ALJ reached the conclusion that Dr. Lashgari's medical opinion was literally not supported by "objective medical evidence."  Instead, the Court finds that the ALJ did not give Dr. Lashgari's opinion *controlling* weight in determining whether Brown was disabled because it was not consistent with the other evidence of record, including medical opinions before and after Dr. Lashgari's 2002 examination.  In that sense, the Court's belief is that the ALJ was not making a conclusion undermining the medical determinations made in Dr. Lashgari's opinion.  Rather, the ALJ's use of the phrase "objective medical evidence" was in reference to other medical evidence in the record. The Court believes that, in using the term "give weight," the ALJ was referencing the notion that in making his determination of whether Brown is disabled, the ALJ did not give Dr. Lashgari's opinion, which is inconsistent with other medical

12

evidence in the record, *controlling* weight.

As mentioned above, the ALJ's finding that Brown has an RFC for light work activity is supported by substantial evidence. First, in 1999, Dr. Verst determined that, despite his finding of progression of lumbar spine disc herniation and osteophyte formation, Brown could engage in work activities that included standing, and lifting or handling mild to moderate objects. Then, in 2000, Dr. Caldwell's assessment concluded that Brown could occasionally lift and/or carry fifty (50) pounds, frequently lift and/or carry twenty-five (25) pounds, stand and/or walk six (6) hours in an eight (8) hour workday, sit six (6) hours in an eight (8) hour workday push and pull unlimitedly and kneel and crouch occasionally. Third, in 2001, one of Brown's treating physicians at the VA noted there was a possible exaggeration of low back pain. In 2004, at a usual check-up visit, Brown reported feeling great, and his only complaint was that he still had episodes of sciatica.

In sum, Dr. Verst conducted an MRI on Brown in June of 1999, three years prior to Dr. Lashgari's examination. Despite an MRI identifying lumbar spine disc herniation, Dr. Verst concluded that Brown could do work that involved standing, and lifting or handling mild to moderate objects. Again in 2000, with the same disc herniation present, Dr. Caldwell opined that Brown could undertake work activities consistent with Dr. Verst's opinion. Then, in 2002, Dr. Lashgari conducted an MRI which articulated the same findings of disc herniation, but Dr. Lashgari opined that Brown was more limited in his work capacity than reflected in to Drs. Verst's and Caldwell's previous opinions. Subsequently, in 2004, Brown reported feeling great, commenting that his medication was helping a lot. After review of this condensed time line, the conclusion that Dr. Lashgari's opinion should not be given controlling weight in determining whether Brown is disabled is supported by substantial evidence.

13

From a psychological standpoint, the record evidence shows that Brown's ability to relate and interact with others, including a supervisor, is fair and that he has the ability to follow simple, routine instructions.  One psychologist determined Brown did not have a psychological impairment severe enough to impede his ability to work and further stated that Brown's drug addiction was the largest impediment in maintaining employment. *See* 42 U.S.C. § 423(d)(2)(C); *Watson v. Soc. Sec. Admin.,* No. 99-5625, 2000 WL 303000, at *1 (6th Cir. March 14, 2000) (holding that if a claimant's drug addiction would be a material factor in any determination of disability, <u>he is considered not disabled</u>).  As a matter of everyday life, the evidence reveals that Brown cooks, makes the bed, and vacuums around the house.  Brown also makes occasional trips to the store and plays BINGO.

The Court recognizes that the medical evidence above leaves no question that Brown suffers from back and/or leg problems.  In 1999, Brown was diagnosed as having chronic disc herniation at the vertebral levels of L3, 4.  Then in 2000, with that herniation still present, Brown was found to have atrophy in the left thigh, possible left knee osteoarthritis, and a decreased range of motion of the spine with flexion and extension. The next year, 2001, Brown had roughly the same symptoms, and was found to have straight leg raising of eighty (80) degrees on the right side and seventy (70) degrees on the left side.   These findings were consistent with Brown's medical examinations in 2002.

The Court's role, however, is not to make a *de novo* determination of whether Brown is injured, disabled, or to decide whether it would have reached a different determination when considering the same evidence.  Instead, judicial review of the Commissioner's or ALJ's decision is limited to determining whether the proper legal standards were employed in reaching the conclusion and whether the findings were supported by substantial evidence. *Garcia v. Secretary of*

14

*Health and Human Servs.,* 46 F.3d 552, 555 (6th Cir. 1995).  After noting that Brown suffers from back problems, knee problems, depression, and drug abuse, the ALJ still concluded Brown had an RFC to perform light work activity.  Based on this RFC, the ALJ determined that Brown could return to his past relevant work experience as a cashier as that occupation is described by the Dictionary of Occupational Titles.[6]  The Court finds that the ALJ applied the correct legal standards by using the five-step sequential analysis, to determine whether Brown is disabled, as required by the regulations, adequately weighing the record medical evidence in determining Brown's RFC, and utilizing the correct definition of past relevant work experience.

The Court finds, additionally, that the foregoing medical, psychological, and lifestyle evidence amounts to more than a scintilla of evidence supporting the conclusion that Brown retains an RFC for light work activity.  The medical evidence indicating a range of functionality, moreover, is substantial enough that a reasonable mind could rely on it to support the conclusion that Brown is not disabled as that term is defined in the Social Security Act, and thus, that he could return to his past relevant work experience as a cashier.  *See Richardson,* 402 U.S. at 401.

Although unclear, it appears that the R&R implicitly concluded that the ALJ's decision that Brown is not disabled was not supported by substantial evidence.  This conclusion can be inferred from the R&R's finding that the ALJ's decision was "a proposition calling for testimony from a medical expert and not the ALJ exercising his 'medical expertise.'" *See* Doc. 24 at 5.  As pointed

---

[6]       The Dictionary of Occupational Titles defines the activities of a cashier to include: operating a cash register to itemize and total customer's purchases; reviewing price sheets to note price changes and sale items; collecting cash, check or charge payments from customers and making change for cash transactions; stocking shelves and marking prices on items; counting money in the cash drawer at the beginning and end of each shift; etc. *See* § 211.462-014, Dictionary of Occupational Titles (Definition Section) (4th Ed. Rev. 1991).

out by the Commissioner in its second objection, and reinforced by the case law in this circuit, an ALJ's factual finding is not subject to being set aside by an argument that one medical opinion should be given greater weight than another. *Mullins v. Secretary of Health and Human Servs.*, 836 F.2d 980, 984 (6th Cir. 1987).  Where, as here, several reports indicate a range of functionality, it is the responsibility of the ALJ to determine the RFC of the applicant and whether that RFC allows the applicant to engage in his or her past relevant work.

As outlined at length above, there is no question that the evidence is conflicting in this case, but there also is no doubt that the ALJ's finding is supported by substantial evidence. *See* Section II.(B.) *supra*.  The ALJ reviewed the entire record, as is required, held a hearing, and came to the conclusion that Brown could do a limited range of light work consistent with his previous relevant work experience as a gas station cashier.  The R&R correctly points out that there is "objective medical evidence probative of [Brown's] subjective complaints."[7]  The Court finds, however, there is also substantial (*i.e.* more than a scintilla) objective medical evidence to support the ALJ's finding that Brown is not disabled.  As stated in *Mullins*, an ALJ's decision should not be set aside simply where a claimant argues that certain medical evidence should be given greater weight than other medical evidence.

## III.  **CONCLUSION**

For the foregoing reasons, the Court finds the decision of the ALJ that Brown is not "disabled" as that term is defined by the Social Security Act is supported by substantial evidence. As such, the Court declines to adopt the R&R (Doc. 24).  Brown's claims for DIB and SSI are

---

[7]     The pertinent issue is not whether there is probative objective evidence to prove the existence of Brown's subjective complaints.  The issue is whether the ALJ's Decision-Unfavorable is supported by substantial evidence.

**DENIED** and his case is **DISMISSED**.

　　　　**IT IS SO ORDERED.**

<br>

　　　　　　　　　　　　　　　　　s/Kathleen M. O'Malley
　　　　　　　　　　　　　　　　　**KATHLEEN  McDONALD  O'MALLEY**
　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**

**Dated: December 20, 2007**

17